# EXHIBIT C

*dep 300*
*1 cd, 1 not fro 1 atty*   CAUSE NO. DC- 13 - 10605

**ORIGINAL**

| | | |
|---|---|---|
| HIGHLAND PARK PRESBYTERIAN CHURCH INC. | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| GRACE PRESBYTERY, INC. | § | 298th M |
| Defendant. | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND
### APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Highland Park Presbyterian Church Inc., a Texas nonprofit corporation, complains of Defendant Grace Presbytery, Inc. and for cause of action respectfully alleges:

### I.
### DISCOVERY CONTROL PLAN LEVEL 3

1.      Discovery will be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.
### REQUEST FOR DISCLOSURE

2.      Defendant Grace Presbytery, Inc. ("Presbytery" or "Defendant") is requested to disclose, within fifty (50) days of service of this Request, the information and materials described in Tex. R. Civ. P. 194.2(a)-(1). Copies of any documents produced in response to these Requests must be produced before the expiration of fifty days of the service hereof at the office of the undersigned counsel or at a place agreed upon by counsel.

## III.
## PARTIES

3.      Plaintiff Highland Park Presbyterian Church Inc. ("HPPC or Plaintiff") is a Texas

not for profit corporation located in Dallas.

4.      Defendant Grace Presbytery, Inc., at all times material to this action, was and is a

Texas nonprofit corporation doing business in Dallas County, Texas.  Defendant may be cited to

appear by serving its registered agent for service of process: Connie M. Tubb, 6100 Colwell

Blvd., Suite 100, Dallas, Texas 75039-3148.   *I cut Inotitro lctty*

## IV.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction based on the Texas Constitution and laws of the State

of Texas, and these claims are within this Court's jurisdictional limits.  Plaintiff brings this action

for injunctive and declaratory relief under the common and statutory laws of the State of Texas

and the United States of America.  (See, e.g. Serbian Eastern Orthodox Diocese v. Milivojevich,

426 U.S. 696 (1976); Jones v. Wolf, 443 U.S. 995 (1979), and; Brown v. Clark, 102 Tex. 323,

334, 1165 W. 360 (1909).  Plaintiff seeks monetary relief of $100,000 or less and non-monetary

relief.

6.      Venue is proper in Dallas County pursuant to Tex. Civ. Prac. & Rem. Code,

§15.001, et seq.

## V.
## FACTS

7.      Defendant Grace Presbytery is a district administrative unit of the Presbyterian

Church (USA) ("PCUSA" or "denomination").  It is one of 173 such presbyteries in the PCUSA

and is comprised of commissioners (presbyters) from approximately 165 congregations located

throughout 53 counties in Northeast, North Central, and Central Texas.  Its principal offices are

located at 6100 Colwell Blvd., Suite 100, Irving, TX 75039-3148. The PCUSA, headquartered in Lexington, KY, was formed in 1983 by the merger of the Presbyterian Church in the United States (the PCUS, or southern branch) and the Presbyterian Church in the United States of America (the UPCUSA, or northern branch). Upon formation of the PCUSA, the PCUS and the UPCUSA both ceased to exist as separate denominations, and Grace Presbytery became a district administrative unit of the PCUSA. The PCUSA currently has approximately 10,500 member churches located throughout the United States, including the State of Texas and Dallas County. Although the national constitution of the PCUSA, The Book of Order, was amended to allege a trust in favor of the PCUSA over all property held by or for particular churches that are affiliated with the PCUSA, authority under the Book of Order to waive the alleged trust or seek its enforcement against a particular church is granted to the presbytery in whose geographic bounds a particular church is situated.

8.    Highland Park Presbyterian Church (or "HPPC") is a particular church of the PCUSA and is a Texas nonprofit corporation domiciled in Dallas County. Prior to its affiliation with the PCUSA in 1983, HPPC was a member church of the PCUS. HPPC was first organized in 1926 and first incorporated on January 31, 1928, as "Highland Presbyterian Church". HPPC variously amended or restated its articles of incorporation, or reincorporated, in 1978, 1981, and 2006. The members of the local church corporation are all those who are on the active rolls of the local congregation. HPPC, located within the geographic bounds of Grace Presbytery, has approximately 4,000 members on its active rolls, is the largest Presbyterian church in the state of Texas and, on information and belief, is one of the largest Presbyterian churches in the United States.

A.    **THE ARTICLES OF INCORPORATION FOR HIGHLAND PARK PRESBYTERIAN CHURCH**

9.    As more fully set forth below, at all relevant times the articles of incorporation of Highland Park Presbyterian Church have provided that the members of the corporation or its corporate board of trustees, when managing the civil affairs of the corporation, shall exercise all powers of the corporation. Said articles further grant, without limitation, exclusive and plenary authority on all property matters to the local board of trustees or local congregation without such authority being made subject to any other ecclesiastical entity or to the provisions of any denominational constitution that are in conflict with the local church's articles of incorporation or with the laws of the State of Texas.

10.    At no time in its history have the articles of incorporation for Highland Park Presbyterian Church contained any provision creating or establishing any trust, express or implied, in favor of a national denomination upon the property held by or for the local church or its civil corporation. Said articles were never amended to add such trust provisos. Neither the congregation, the session (the governing body of the local church for ecclesiastical matters), or the board of trustees of Highland Park Presbyterian Church, Inc. (the governing body of the civil corporation for temporal matters like property) have ever adopted a congregational, session, or corporate resolution creating or assenting to a trust pertaining to property held by or for the particular church.

11.    As noted above, "Highland Park Presbyterian Church" was first incorporated on January 31, 1928. No mention is made in these original articles of any specific denomination. The statement of objects and purposes in Article II state that the corporation is formed "in the support of public worship, to wit: the maintenance of the Presbyterian Church". Article V states that "the corporation has no capital stock other than the lot owned by the Church upon which the

---

Church building is to be erected, of the estimated value of $60,000.00." Article IV provides that the term for which this 1928 corporation is to exist is "50 years". No mention is made in the Articles of Grace Presbytery, the Presbyterian Church (USA), or their predecessors, nor is mention made of any trust over local church property in favor of the PCUSA or its predecessors and enforceable by Grace Presbytery.

12.    Fifty years later "Highland Park Presbyterian Church" amended and restated its articles of incorporation, on January 1, 1978. Article III provided in relevant part that the objects and purpose of the corporation would be to, "encourage, support, maintain and preserve public worship in the Presbyterian Church". Article III(a) and (b) gave exclusive and plenary authority on all property matters, both real and personal, to the corporation, subject only to Texas nonprofit corporation law. The articles of incorporation do not make the exercise of the corporation's powers with respect to property subject to any ecclesiastical provisions or to any ecclesiastical entities beyond the local "Highland Park Presbyterian Church". The only mention of any other ecclesiastical entity is found in Article VI, which states that "the business and affairs of the corporation shall be managed by a board of trustees comprised of five persons, except as otherwise provided by the Book of Church Order of the Presbyterian Church in the United States". This Article, however, does not say, "as that Book of Church Order may be amended from time to time", for example, nor otherwise subordinate the management, control, or operation of the civil corporation to a separate religious charter. Article VIII provided that in the event of dissolution the assets of the corporation would not be distributed by or to the PCUSA or any of its presbyteries but would instead be distributed in accordance with the provisions of Texas nonprofit corporation act and the Internal Revenue Code of 1954. No mention is made in the Articles of Grace Presbytery, the Presbyterian Church (USA), or their predecessors, nor is

mention made of any trust over local church property in favor of the PCUSA or its predecessors and enforceable by Grace Presbytery.

13.     On September 27, 1981, Highland Park Presbyterian Church amended its articles of incorporation to newly provide that it pledged the assets of the corporation for use in performing the general religious functions set forth in Article III of its 1978 Articles, and to newly provide that, in the event of dissolution, recipient organizations of any distribution of assets must qualify for an exemption from Texas property taxation under the Texas property tax code. As before, all such potential distributions continued to be at the exclusive discretion of the trustees of the corporation and would be in accordance with a plan of distribution adopted pursuant to Texas nonprofit corporation law. No mention is made in the Articles of Grace Presbytery, the Presbyterian Church (USA), or their predecessors, nor is mention made of any trust over local church property in favor of the PCUSA or its predecessors and enforceable by Grace Presbytery.

14.     On November 14, 2006, Highland Park Presbyterian Church amended and restated its articles of incorporation. New Article III defines the objects and purposes of the corporation to, "encourage, support, maintain and preserve public worship. The assets and properties of the corporation are hereby pledged for use in performing its exempt functions." No mention is made in the Articles of a particular denomination. Exclusive and plenary authority for all corporate matters authorized under Texas non-profit corporation law, including but not limited to property matters, is vested in the corporation and its board of trustees without reference to or being made subject to any ecclesiastical provision or any entity other than the corporation, "Highland Park Presbyterian Church". As previously stated in prior iterations of the Articles of Incorporation, the 2006 Articles of Incorporation provide that, upon dissolution of the

corporation, distribution of all corporate assets shall be made exclusively by the board of trustees, at its sole discretion, to organizations in the state of Texas organized and operated exclusively for religious, charitable and/or educational purposes that are described in Section 501(c)(3) of the Federal Tax Code and that are qualified for exemption from Texas property taxation under the Texas property tax code. No mention is made in the Articles of Grace Presbytery, the Presbyterian Church (USA), or their predecessors, nor is mention made of any trust over local church property in favor of the PCUSA or its predecessors and enforceable by Grace Presbytery.

15. On August 31, 2006, the board of trustees of the church corporation adopted amended and restated bylaws (2006 bylaws). Article I, Section 2 of the 2006 bylaws state that the corporation will be "operated exclusively for religious, charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended ...". No mention is made anywhere in the 2006 bylaws of Grace Presbytery, the Presbyterian Church (USA), or their predecessors, nor is mention made of any trust over local church property in favor of the PCUSA or its predecessors and enforceable by Grace Presbytery.

16. Article I, Section 4 of the 2006 bylaws provides that all members on the active roll of the congregation of Highland Park Presbyterian Church shall be members of the corporation (which corporation shall here and now be called the "Church").

17. Article II of the 2006 bylaws states in Section 1 that the duties and responsibilities of officers of the corporation under the Texas nonprofit corporation act shall be vested in the session (ecclesiastical governing body) of the Church and that the board of trustees delegates all of its authority to manage the corporation to said session *"except for the authority granted under Article II, Section 2."* Article II, Section 2 of the 2006 bylaws provides that the board of trustees

shall have plenary and exclusive authority to act on behalf of the corporation:

> **For buying, selling, and mortgaging of the property for the Church, acquiring and conveying title to such property, the holding and defending title to the same, and the managing of any permanent special funds entrusted to them for the furtherance of the purposes of the Church. In buying, selling, and mortgaging real property on behalf of the Corporation, the board of trustees shall act <u>solely under the authority of the Church</u>, granted in a duly constituted meeting of the congregation.**

**B.     THE PROPERTY OWNED BY HIGHLAND PARK PRESBYTERIAN CHURCH**

18.     The deeds for all real property owned and held by Highland Park Presbyterian Church list the owner in title as "Highland Park Presbyterian Church, a Texas corporation". No mention is made of any particular denomination, district presbytery, or other ecclesiastical entity. None of the deeds contain any trust language, use restrictions or reservations of rights other than one transfer restricting certain property for use as a church of unspecified nature. The real property owned and held by Highland Park Presbyterian Church falls into three general categories:

a) "East Campus" The main physical plant of Highland Park Presbyterian Church, where the sanctuary and associated buildings are located, commonly known as the "East Campus", is situated on two tracts, to wit:

Tract One:

BEING Tract No. 1, of University Lake Park and Highland Park Presbyterian Church Tracts, an Addition to The City of University Park, Texas, according to the Plat thereof Recorded in Volume 4, Page 169, Map Records of Dallas County, Texas; and containing 3.34416 acres of land, and being in the John Scurlock Survey, Abstract No. 1351, Dallas County, Texas; and being the same property described in Deed filed November 29, 1932, Volume 1779, Page 600, Deed Records of Dallas County, Texas; and having an address of 3821 University Boulevard, University Park, Texas, 75205.

Tract Two:

BEING Lots 9 and 10, Block B, of Windsor Place, an Addition to The City of

Dallas, Texas, according to the Plat thereof Recorded in Volume 2, Page 299, Map Records of Dallas County, Texas; and containing 18,740 square feet of land, more or less, and being in the John Scurlock Survey, Abstract No. 1351, Dallas County, Texas; and being the same property described in Quit Claim Deed filed October 1, 1974, Volume 74191, Page 2149, Deed Records of Dallas County, Texas; and having an address of 3821 University Boulevard, University Park, Texas, 75205.

b) "West Block" HPPC also owns a contiguous block that consists of eleven residential properties, commonly known as the "West Block". The municipal addresses of these "West Block" properties are set forth in Appendix A, attached hereto and made a part hereof. These "West Block" properties are located within Block B of Windsor Place, an Addition to the City of University Park, Dallas County, according to the Map thereof recorded in Volume 2, Page 299, Map Records of Dallas County.

c) "Jenkins Properties" HPPC also owns certain "Jenkins Subdivision" properties, consisting of three houses whose municipal addresses are 3829 McFarlin, 3833 McFarlin, and 3837 McFarlin, all being located on a contiguous block to the south of McFarlin, and being Lots 7, 8, and 9 in Jenkins Subdivision of Tract 3 of University Park and Highland Park Presbyterian Church Tracts according to the Map recorded in Volume 4, Page 24, of the Map Records of Dallas County. These properties are also listed in Appendix A, attached hereto and made a part hereof.

19.     The estimated value of the real property of Highland Park Presbyterian Church is thirty million dollars ($30,000,000.00). All of it, the land and all improvements thereon, were purchased, built, insured, and maintained using funds donated exclusively by local members of HPPC, without any assistance from the PCUSA, Grace Presbytery or their predecessors—with the single exception of one "loan" from the PCUS Home Missions Board on May 25, 1927 for $7,500.00.

20.     According to HPPC minutes of June 12, 1927, this $7,500.00 sum was "aid ... to

enable us to erect and possess a House of Worship and that in order to obtain such aid in such amount it would be necessary for the Trustees of the Church to execute a bond in the amount of $7,500." Repayment of the bond was to be secured by a lien on the church property. However, according to the June 12, 1927 minutes, re-payment was required only if HPPC ceased corporate existence or "the mortgage and property be alienated or abandoned, or the House of Worship be alienated or abandoned as a House of Worship".

21.     Grace Presbytery, the PCUSA, and their predecessors have not provided any substantial financial support to HPPC in over eighty-five (85) years. HPPC has, however, since its formation in 1926, made substantial financial contributions to Grace Presbytery, the PCUSA, and their predecessors. Over the past fifteen years alone, from 1998 forward, HPPC has donated to Grace Presbytery and to the PCUSA, in voluntary per capita contributions, voluntary mission giving, and special offerings and other related giving and support, in excess of $3,000,000.00.

## C.     THE BASIS OF GRACE PRESBYTERY'S CLAIM TO THE PROPERTY OF HIGHLAND PARK PRESBYTERIAN CHURCH

22.     The Constitution of the PCUSA consists of two parts, the Book of Confessions (Part I) and the Book of Order (Part II). The Book of Confessions contains doctrinal statements and statements of church governance (polity). The Book of Order focuses on church governance and divides itself into three main sections: the Form of Government, the Directory of Worship and the Rules of Discipline. The Book of Order underwent substantial revision, effective July, 2011, and many of its former provisions that were retained were newly numbered. The provisions in the PCUSA Constitution relating to property are found primarily but not exclusively in the Form of Government of the Book of Order, Chapter Four G-4.01 – G.4.40208 (formerly Chapter VIII, G-8.000 – G-8.700).

23.     The PCUSA Book of Order includes a trust clause, G-4.0203 (formerly G-

8.0201), which asserts that, "All property held by or for a particular church … is held in trust nevertheless for the use and benefit of the Presbyterian Church (USA)." This clause is the basis for the assertion by Grace Presbytery of a right to assert control over the use and disposition of all property held by or for HPPC, Inc. It is the position of HPPC, Inc., however, that this clause, and its predecessor added to the PCUS Book of Church Order in the last year of the PCUS' existence, are not applicable to plaintiff's property and are not legally enforceable under the Constitution or laws of the State of Texas.

24.     The PCUSA Book of Order contains a clause asserted by the denomination to pertain to ownership. G-4.0207 (formerly G-8.0600) alleges that a PCUSA presbytery (such as Grace Presbytery) may dictate ownership of local church property located within the geographic bounds of the presbytery—under certain circumstances that the presbytery can manufacture or create. The PCUS Book of Church Order was amended in 1982/83 to add a similar clause (6-5). On information and belief, the PCUS Book of Church Order did not previously contain a similar clause. It is plaintiff's position that G-4.0207 and any predecessor clause in the PCUS Book of Church Order are not applicable to plaintiff's property and are not legally enforceable under the Constitution or laws of the State of Texas.

25.     G.4.0205 (formerly G-8.0301) of the PCUSA Book of Order pertains to departure from the PCUSA and provides that when a local church ceases to be a particular church of the PCUSA its property shall be "held, used, applied, transferred, or sold as provided by the presbytery." The PCUS Book of Church Order was amended in 1982/83 to add a similar clause (6-4). On information and belief, the PCUS Book of Church Order did not previously contain a similar clause. It is the plaintiff's position that G-4.0205 and any predecessor clause in the PCUS Book of Church Order are not applicable to plaintiff's property and are not legally

enforceable under the Constitution or laws of the State of Texas.

26.     Although G-4.0206 (formerly G-8.0501) of the PCUSA Book of Order states that the written permission of the presbytery is required before a particular church can sell, mortgage or otherwise encumber any of its real property, Chapter 6 of the 1982/1983 edition of the PCUS Book of Church Order did *not* contain such a requirement but, to the contrary, stated the opposite at 6-8, that "Nothing in this chapter shall be construed to require a particular church to seek or obtain the consent or approval of any church court above the level of the particular church in order to buy, sell or mortgage the property of that particular church in the conduct of its affairs as a church of the PCUS."

27.     In addition, other property provisions in Chapter VIII of the PCUSA Book of Order that are not substantially similar to provisions in Chapter 6 of the 1982/1983 edition of the PCUS Book of Church Order are also not applicable to Highland Park Presbyterian Church and are not legally enforceable under the Constitution or laws of the State of Texas.

28.     The Book of Order includes "Historic" (i.e., foundational) Principles of Church Order. These basic PCUSA governing principles state at F-3.0101 that, as a matter of religious freedom, provisions of the denominational constitution are not to be enforced through the power of civil courts. F-3.0101 states:

**(a)     That "God alone is Lord of the conscience, and hath left it free from the doctrines and commandments of men which are in anything contrary to his Word, or beside it, in matters of faith or worship."**

**(b)     Therefore we consider the rights of private judgment, in all matters that respect religion, as universal and unalienable: <u>We do not even wish to see any religious constitution aided by the civil power</u>, further than may be necessary for production and security, and at the same time, be equal and common to all others.**

29.     The Book of Confessions (Part I of the constitution of the PCUSA) further sets forth the principle that the collective organization or gathering (communion) of Christians under

a Presbyterian form of government should not burden or infringe existing or vested property rights. Specifically, the Westminster Confession of 1647, included in the Book of Confessions, states at 6.148, "Nor doth their communion one with another as saints, take away or infringe the title or property which each man hath in his goods and possessions."

30.    G-4.0208 (formerly G-8.0700) of the PCUSA Book of Order sets forth an exemption from certain property provisions of the PCUSA Book of Order.  G-4.0208 provides that no particular church (local congregation) of the PCUSA shall be bound by any of the property provisions in the Book of Order if it was not previously subject to a similar provision in the denominational constitution it was subject to immediately prior to the creation of the PCUSA — as long as that congregation, within a period of eight years following the establishment of PCUSA, votes to claim this exemption.  In the event of such timely vote, a particular church "shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the Presbyterian Church USA."

31.    Highland Park Presbyterian Church timely exercised the exemption clause of G-4.0208 (then G-8.0700) of the PCUSA Book of Order at a regularly called congregational meeting on April 29, 1984.  At that meeting the congregation adopted a motion to exercise the exemption provision in (then) Chapter VIII of the PCUSA Book of Order, it being the understanding and intent of the congregation at the time that by doing so it would "continue the holding of property of Highland Park Church in accordance with PCUS Book of Church Order (1982-83 edition), "The Form of Government, Chapter VI."  This action taken by Highland Park Presbyterian Church, notice of which was received by Grace Presbytery, manifests an intent by Highland Park Presbyterian Church to reject any ownership or control claims by a denomination,

or claims by the denomination of a right to determine ownership, and to reject the concept of holding or conveying any of its property in trust, or creating or establishing a trust, for the use and benefit of a national denomination, whether the PCUSA or the PCUS.

32.    As further indication of intent, according to the minutes of the April 29, 1984, congregational meeting at which Highland Park Presbyterian Church claimed the exemption, the individual who moved that the congregation claim the exemption, Mr. Burton Gilliland (corporate trustee and chairman of the property acquisition committee), explained prior to the vote that the motion pertained "to the manner in which the church owns *and operates* its real estate ... In our former denomination (PCUS) we operated under the PCUS Book of Church Order which gave the congregation *complete control* over its property. The new Book of Order PC(USA) provides that our former denomination (PCUS) could, by action of the congregation, opt to continue operating its property as in the past." The text of this explanation, provided to the congregation immediately prior to its vote, indicates that its understanding and intent was to preserve not only the congregation's ownership but also its exclusive right to control the use and disposition of all of its property.

33.    Following the congregational adoption of the April 29, 1984 motion, the congregation notified Grace Presbytery of its action, which notice, pursuant to G-3.0108a (formerly G-9.0407 – 9.0409) of the PCUSA Book of Order was accepted without objection by Grace Presbytery in affirmation that said proceedings were "regular and in accordance with the Constitution" and were "prudent and equitable". This notice was in the form of a letter from Harry S. Hassall, Vice-Moderator of the HPPC session, to Rev. A.M. Hart, Stated Clerk of Grace Presbytery, dated May 7, 1984.

34.    The effect of HPPC, Inc.'s timely vote to claim the exemption of G-4.0208

(formerly G-8.0700) and thereby fall back on Section 6-8 of the PCUS Book of Church Order was to negate the assertion of a trust at G-4.0203 (formerly G-8.0201), even within the denomination's own governing documents. The express reservation of an unfettered right to determine the use, control, or disposition of one's own property is mutually exclusive of giving consent to another party to determine the use, control, or disposition of that same property.

35. For approximately sixty years, from the time Highland Park Presbyterian Church was founded in 1926, and continuously throughout its existence until 1982, no denomination with which it was affiliated ever contained any *express* trust clause in the denominational constitution. Prior to the addition of express trust language in the 1982/1983 edition of the PCUS Book of Church Order, no denomination with which it was affiliated ever contained in its constitution any *implied* trust over local church property which ran in favor of the national denomination.

36. In anticipation of the merger of the "southern church" and the "northern church," in the year immediately prior to the 1983 formation of the PCUSA, the PCUS Book of Church Order was reportedly amended to add express trust clauses, in Section 6-1, Section 6-2 and 6-3, which clauses first appeared in the 1982/1983 edition of the PCUS Book of Church Order. These three trust clauses are ambiguous, inconsistent and are of uncertain meaning. Sections 6-1 and 6-2 of the 1982/1983 edition of the PCUS Book of Church Order assert that a particular church holds title to property in trust for both the benefit of the particular church ("the corporation" in 6-2) and the denomination. Section 6-3 asserts a trust in favor of the denomination.

37. The process whereby trust clauses were added to the constitutions of the national denominations did not include or result from any vote, approval or action by the local

congregation of Highland Park Presbyterian Church or its corresponding plaintiff civil corporation, which is the owner and titleholder of record of the real property at issue. Instead, the process involved: a) participation by presbytery/commissioners (voting delegates) at the national General Assembly, chosen to attend the G.A. by the district presbyteries (which presbyteries in practice are the beneficiaries of the trust clauses that were added), and; b) participation by presbyters (voting delegates) at meetings of the district presbyteries, chosen to attend by local congregations. The PCUSA Book of Order expressly states at F-3.0204 and F-3.0101 (formerly G-4.0301d and G-1.0301) that presbyters are not required to act in a representative capacity on behalf of local congregations.

38.    Following initial approval by the commissioners to General Assembly, the new trust clauses were added to the denominational constitutions upon ratification by a requisite number of presbyteries — irrespective of whether or not Grace Presbytery, acting through its then-presbyters, voted in favor of ratification, and irrespective of whether the local property owners of record, such as HPPC, Inc., participated in the ratification process and gave authorized, local consent.

39.    The PCUS Book of Church Order did not require, nor does the PCUSA Book of Order require, that any property deeds include trust clauses in favor of a national denomination. Nor do these denominational charters otherwise require mention or inclusion of the national denomination (such as the PCUS or PCUSA) in the name or identity of the listed, local title holder to property.

40.    At no time have the members of Highland Park Presbyterian Church or its corporation, or their governing bodies (the session and the board of trustees, respectively), ever concurred in, accepted or otherwise indicated acquiescence to the denomination's assertion of a

trust over local church property nor any denominational claim to determine ownership, use, or control of property titled in the name of the local church corporation or of any improvements thereon. At all times the ecclesiastical congregation, the civil corporation, and their respective governing boards have affirmed and reaffirmed their understanding and intent that all property held by the local church, whether incorporated or as an unincorporated religious association, whether corporeal or incorporeal, movable or immovable, (real or personal), is held by or for it in full and complete ownership in accordance with the deeds, articles of incorporation and other documents indicative of intent, and that none of said property is held in trust for the use and benefit of a national denomination or any if its district administrative units such as Grace Presbytery.

**D.     THE PCUSA/PCUS ACKNOWLEDGE THAT LOCAL CHURCH PROPERTY MATTERS ARE DETERMINED BY STATE LAW AND ARE NOT CONTROLLED BY ASPIRATIONAL ASSERTIONS IN DENOMINATIONAL CONSTITUTIONS**

41.     Section G-4.0101 (formerly G-7.0401) of the PCUSA Book of Order states that, "Whenever permitted by civil law, each particular church shall cause a corporation to be formed and maintained." The PCUS Book of Church Order also contains clauses authorizing and encouraging incorporation under state law (6-1, 6-2 of the 1982/1983 edition). The PCUSA Book of Order not only mandates incorporation where permitted by civil law, but also provides, at G-4.0101, that the corporation so formed shall be the title holder of record of the local church property. In mandating local church incorporation when permitted by civil law, the PCUSA and its district administrative unit, Grace Presbytery, have acknowledged that property matters are not governed or controlled by the trust or ownership provisions asserted in the PCUSA constitution, or by the constitution of its predecessor denomination. Such provisions are aspirational only. Property matters are instead subject to and determined by the civil laws of the

state in which the property is located and in which the local church has incorporated.

42.    The PCUSA Book of Order does not, and the former PCUS Book of Church Order did not, require that:

a) a local church corporation include the name of the denomination (PCUS or PCUSA) in the local corporate name;

b) local deeds contain the name of the denomination as part of the grantee's identification;

c) inclusion of trust language in the deeds;

d) local articles of incorporation state that the affairs of the corporation are subject to the denominational constitution irrespective of any contrary provisions in the civil articles of incorporation or state or federal law.

43.    The PCUSA's "Legal Resource Manual for Presbyterian Church (USA) Middle Governing Bodies and Churches" expressly acknowledges that the provisions of the PCUSA constitution characteristically do not control property matters ("Almost all property matters are governed by state law …").

44.    G-9.0102 of the PCUSA Book of Order distinguished the spiritual, ecclesiastical realm from temporal, civil authority, by providing, "Governing bodies of the church are distinct from the government of the state and have no civil jurisdiction or power to impose civil penalties. They have only ecclesiastical jurisdiction." According to this provision, a presbytery or other ecclesiastical governing body of the PCUSA cannot exercise civil power to enforce a claim over local church property *based on* provisions in the denominational constitution. Nor can they obtain civil court enforcement of denominational property provisions if those provisions are in derogation of or are contrary to the civil laws of the state. The denomination's property provisions, in particular its trust clause, are aspirational only. [On information and belief, G-9.0102 was replaced by G-3.0102 in the new Form of Government that became effective in July 2011. G-3.0102 provides in similar fashion that, "Councils of this church have only

ecclesiastical jurisdiction for the purpose of serving Jesus Christ and declaring and obeying his will in relation to truth and service, order and discipline.  They may frame statements of faith, bear testimony against err in doctrine and immorality in life, resolve questions of doctrine and discipline, give counsel in matters of conscience, and decide issues properly brought before them under the provisions of this Book of Order ..."]

45.    As a corollary to former G-9.0102 and present G-3.0102 of PCUSA Book of Order, which states that the PCUSA and its administrative units such as Grace Presbytery have only ecclesiastical jurisdiction and do not have temporal authority over civil matters (in recognition that property matters are to be governed by state law), former G-1.0301(b) (and present F-3.0101b) of the PCUSA Book of Order also states that the provisions of the denominational constitution are not, as a matter of the free exercise of religion, to be enforced by the civil power of the state through its courts.  Therefore, while this court has subject matter jurisdiction to resolve the property dispute before it, it cannot do so by giving controlling authority to the PCUSA Book of Order property provisions, as such would constitute an unlawful church establishment that is not only prohibited by the First Amendment to the United States Constitution and the Constitution of the State of Texas, *but also by the PCUSA's own constitution*.  Rather, any valid trust or other property interest in favor of Grace Presbytery or the PCUSA, if such exists at all, must be founded only upon mutual intent evidenced by the use of ordinary civil means pursuant to state law.

**E.    TEXAS LAW DOES NOT PERMIT THE ESTABLISHMENT OF A VALID AND ENFORCEABLE TRUST IN THE MANNER ASSERTED BY GRACE PRESBYTERY.  TEXAS LAW HAS BEEN IGNORED BY GRACE PRESBYTERY.**

46.    As HPPC was incorporated in Texas, issues concerning its governance are governed by the Texas Non-Profit Corporation Act.  TEX. REV. CIV. STAT. art. 1396-

1.02(A)(1), et seq. and § 304; TEX. BUS. ORGS. CODE § 1.101 (providing that Texas law governs internal affairs of entities formed by certificate of formation from Texas).

47.    Alleged trusts purporting to hold Texas land are governed by Texas law. Toledo Soc. for Crippled Children v. Hickok, 261 S.W.2d 692, 697 (Tex. 1953); Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corp., 699 S.W.2d 864, 877 (Tex. App.–Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("[A]s a general rule it is held that the administration of a trust imposed on land is governed by the law of the state where the land is located and must be supervised by the courts of that state."); RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 278. Trusts administered by Texas trustees are governed by Texas law. Warner v. Florida Bank & Trust Co., 160 F.2d 766, 771 (5th Cir. 1947) ("Matters of administration are determined by the law of the situs or the seat of the trust, and the domicile of the trustee of intangible personal property including shares of stock is usually the seat of the trust."); RESTATEMENT (SECOND) CONFLICT OF LAWS 2d (1971) § 270(b), *comment a*.

48.    Texas law requires that any trust concerning realty must be written and signed by the settlor. Texas law also makes all trust revocable unless they expressly state otherwise. So even assuming a trust on behalf of the PCUSA enforceable by Grace Presbytery ever existed, it was revoked in April 1984 by express act of the owner/settlor HPPC.

49.    Property can be placed in a trust only by its owner. TEX. PROP. CODE § 112.002 ("A trust is created only if the settlor manifests an intention to create a trust."); see also id. § 111.004(4); State v. Rubion, 308 S.W.2d 4, 10 (Tex. 1957); RESTATEMENT (SECOND) OF TRUSTS § 351 ("A charitable trust is created only if the settlor properly manifests an intention to create a charitable trust."). Since at least 1943, Texas statutes have required either a declaration, a deed, or a will from an owner to place property in trust. TEX. PROP. CODE §

112.001 ("A trust may be created by: (1) a property owner's declaration that the owner holds the property as trustee for another person; (2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person; (3) a property owner's testamentary transfer to another person as trustee for a third person ..."); accord, TEXAS TRUST ACT § 7 (formerly TEX. REV. CIV. STAT. art. 7425b-7), Act of April 19, 1943, 48th Leg., R.S., ch. 148, § 7, 1943 TEX. GEN. LAWS 232, 234.

50.     "Declarations of the purported beneficiary of the trust are not competent to establish the trust." Best Inv. Co. v. Hernandez, 479 S.W.2d 759, 763 (Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.); Wise v. Haynes, 103 S.W.2d 477, 483 (Tex. Civ. App.–Texarkana 1937, no writ) ("[T]he declarations of the cestui que trust are not competent to establish the trust.").

51.     The statute of frauds requires that a trust involving realty must be in writing and signed by the settlor. See TEX. PROP. CODE § 112.004 ("A trust in either real or personal property is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent ..."). This has been Texas law since 1943. TEXAS TRUST ACT § 7 (formerly TEX. REV. CIV. STAT. art. 7425b-7), Act of April 19, 1943, 48th Leg., R.S., ch. 148, § 7, 1943 Tex. Gen. Laws 232, 234 ("Provided, however, that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared ... [b]y a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing; ..."). As the PCUSA trust clause was not signed by the Presbytery or by HPPC, Inc., it is invalid in Texas.

52.     Even if a trust in favor of the PCUSA once existed, it has long since been revoked. Unlike most states, Texas law declares all trusts revocable unless the trust itself expressly says otherwise: "A settlor may revoke the trust **unless it is irrevocable by the express**

**terms** of the instrument creating it or of an instrument modifying it." TEX. PROP. CODE §
112.051(a).  The rule is different in most other states, as it was in Texas before 1943.  See
TEXAS TRUST ACT § 7 (formerly Tex. Rev. Civ. Stat. art. 7425b-41), Act of April 19, 1943,
48th Leg., R.S., ch. 148, § 7, 1943 Tex. Gen. Laws 232, 234 ("Every trust shall be revocable by
the trustor during his lifetime, unless expressly made irrevocable by the terms of the instrument
creating the same or by a supplement or amendment thereto."); Monday v. Vance, 49 S.W. 516,
518 (Tex. 1899); Citizens Nat. Bank of Breckenridge v. Allen, 575 S.W.2d 654, 657 (Tex. App.–
Eastland 1978, writ ref'd n.r.e.) In Texas, "[t]rusts created under Texas law are revocable, unless
made specifically irrevocable." Ayers v. Mitchell, 167 S.W.3d 924, 930 (Tex. App.–Texarkana
2005, no pet.).

53.    Nothing in the PCUSA trust clause or anywhere in the PCUSA Book of Order or
its predecessors expressly created an irrevocable trust, so any alleged trust in favor of the
PCUSA was revocable.  That is what HPPC did in April, 1984 by claiming the exemption
provision.  The only provision in the Book of Order said to be irrevocable—not subject to any
amendment, is this exemption clause.

**VI.**
**CAUSES OF ACTION**

**A.    DECLARATORY RELIEF**

54.    Paragraphs 1 through 53 above are re-alleged as if fully stated herein.

55.    In Masterson, et al. v. The Diocese of Northwest Texas, et al., ____ S.W.3d____

(Tex. 2013), Cause No. 11-0332 (issued Aug 30, 2013), the Texas Supreme Court held that:

> We join the majority of states that have considered the matter. We hold that Texas
> courts should use the neutral principles methodology to determine property
> interests when religious organizations are involved. Further, to reduce confusion
> and increase predictability in this area of the law where the issues are difficult to
> begin with, Texas courts must use only the neutral principles construct.

Applying neutral principles of law to resolve church property disputes, "[O]n the basis of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property.", Jones v. Wolf, 443 U.S. 595 at 603 (1979), all property held by or titled in the name of the plaintiff, and any improvements thereon, whether corporeal or incorporeal, movable or immovable, or real or personal, is held without trust for the use and benefit of the PCUSA or other national denomination, or any of its regional administrative units such as Grace Presbytery. Highland Park Presbyterian Church Inc. holds all property titled in its name, and all improvements thereon, in full, complete, and unfettered ownership pursuant to the laws of the State of Texas and as set forth in plaintiff's deeds and articles of incorporation; Neither the PCUSA nor any of its regional administrative units such as Grace Presbytery has any right, title or interest, in trust or otherwise, in said property, nor right to determine the ownership, use or control thereof.

**B.  INJUNCTIVE RELIEF**

56.     The PCUSA Book of Order ambiguously states that when there is a "report" that a particular church is "affected with disorder" a presbytery can, without prior notice or hearing, appoint an "administrative commission" to indefinitely assume "original jurisdiction of the existing session" (i.e. Remove and replace the governing body of the particular church) and act to "correct the difficulties," which can include the power to "dissolve a pastoral relationship" (i.e. Remove and replace the local pastor). The use of an administrative commission is intended to address *spiritual* matters and operate *ecclesiastically* to assure sound doctrine and to correct any internal divisions within a particular congregation that might otherwise threaten the peace, purity, and unity within a local congregation.

57.    PCUSA presbyteries have begun departing from the customary and expected use of administrative commissions, and have started misusing them for *temporal*, civil purposes—as a device to try and impermissibly expropriate local church property under the purported guise of ecclesiastical cover.

58.    PCUSA presbyteries, in response to dissent, whether perceived or actual, by local congregations, ministers, church officers, and trustees to certain external denominational actions, have variously: a) taken acts intended to assert ownership or place clouds on otherwise merchantable local property titles by recording, without prior notice, affidavits or other documents in local mortgage and conveyance records which improperly assert trusts on local church property in favor of the denomination, regardless of the facts of a local church's property history or the laws of the state in which local church property is situated, b) without notice sought to change locks on local church property and otherwise seize local church assets, and c) appointed "administrative commissions" to assert "original jurisdiction" to supplant existing congregational governance by removing, without notice and opportunity for hearing, dissenting ministers and sessions, thereby permitting the PCUSA presbytery to effectively confiscate local church property and deal with it as if its own.

59.    Heightening the threat to local congregational property, the PCUSA, through its Office of General Assembly (Department of Constitutional Services), issued "Advisory Opinion Note 19", which states in part III thereof that if a presbytery, such as Grace Presbytery, fails to appoint an administrative commission to take over control of a local church voicing dissent over denominational policies then the next higher ecclesiastical authority, the synod, may appoint an administrative commission to take over control of the presbytery, so as to thereby gain control of local church property.

60. Illustrating the aggressive tactics increasingly being used by PCUSA presbyteries to utilize "administrative commissions" as the mechanism or device to try and effect denominational ownership and control over local church property, the PCUSA headquarters prepared legal strategy memoranda, waived any privilege of confidentiality, disclosed the memoranda to the press and public, and made them available on the internet. The PCUSA legal strategy memoranda:

a) <u>advocate use of administrative commissions specifically for church property disputes,</u> and in conjunction therewith advises how to remove the local pastor and/or governing board of the local church;

b) advise how to freeze local church assets and physically seize property;

c) recommend placing a cloud on local church property titles by filing affidavits in property records, irrespective of state law or the facts of any property in dispute;

d) recommend mailing letters concerning contested property to any banks or other financial institutions that hold accounts for the local church, which letters "order" that no assets be released to the local church;

e) <u>instruct presbyteries to investigate the religious background of any judge assigned to the case in order to exploit potential partiality or religious bias;</u>

f) recommend that presbyteries in their pleadings "use spiritual language" in order to posture themselves in a positive light, and to negatively refer to the local church in the caption and in pleadings as "schismatic"; and

g) recommend to presbyteries, through the use of administrative commissions, to try and keep the local church in a defensive secular legal posture, counseling "Let the schismatics seek Caesar's help."

61. Grace Presbytery, following direction from denominational headquarters, has acted aggressively to squelch dissent and the exercise of constitutionally protected freedoms, through the misuse of "administrative commissions" as devices for expropriating property bought and paid for and owned by dissenting congregations. On May 21, 2012, one day after the congregation of First Presbyterian Church of Longview, Texas voted by over a 75% margin to

seek dismissal from the PCUSA, an administrative commission appointed by Grace Presbytery the week before "assumed original jurisdiction" over FPC Longview.  The administrative commission substituted itself in place of the session (board of elders) that had been duly elected by the congregation, and asserted ersatz authority as the new governing body of the local church in order to seize use and control of all property held by or for FPC Longview.

62.     A temporary restraining order and temporary injunction while this suit is pending is necessary to stay the hand of Grace Presbytery from appointing an administrative commission that would, without just cause, usurp and replace the authority of the pastor, the session, or the board of trustees in order to effect control of the property.  Said restraining order and temporary injunction would protect the members of Highland Park Presbyterian Church who, under Texas nonprofit corporation law and HPPC's Articles of Incorporation, are also the members and in effect the shareholders of the local church corporation.  Said restraining order and temporary injunction would preserve the status quo until such time as the question of ownership and use of the property of Highland Park Presbyterian Church can be determined by this Court.  Absent a temporary restraining order and temporary injunction the rights of plaintiff, the governing body of Highland Park Presbyterian Church (the session), and the members of the congregation of Highland Park Presbyterian Church, and the property rights of Highland Park Presbyterian Church will be irreparably injured.

63.     Plaintiff seeks a permanent injunction in the form of the temporary injunction and a declaratory judgment that all property held by or for Highland Park Presbyterian Church, and any improvements thereon, whether real or personal, corporeal or incorporeal, movable or immovable, is held without any trust in favor of a national denomination or any of its district administrative units, such as Grace Presbytery, and that all property held by or titled in the name

of the local church corporation is held by it in full and exclusive ownership and that neither the PCUSA nor Grace Presbytery has any right, title or interest, in trust or otherwise, in said property, nor right to determine the ownership thereof.

64.     The actions by PCUSA presbyteries described above violate state property law and trust law, free speech rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, the religion clauses of the First Amendment to the United States Constitution, the due process guarantees of the Fourteenth Amendment to the United States Constitution, the counterparts set forth in the Texas Constitution, and substantive property rights guaranteed under the Texas Constitution. The effect of such actions, if taken in whole or in part or threatened by Grace Presbytery, would chill if not violate the foregoing, protected rights, interfere with appropriate corporate church governance, impede the ability of Highland Park Presbyterian Church to hold a congregational or corporate meeting free of improper interference, and cloud the title of property held by Highland Park Presbyterian Church.

65.     Under Texas law a showing of irreparable harm is presumed when the deprivation of a constitutional right is involved, or the protection of the ownership, possession, and enjoyment of immoveable property, or when the moving party demonstrates that the action sought to be enjoined is in violation of prohibitory law.

66.     Highland Park Presbyterian Church is a not-for-profit corporation. Its primary purpose is not monetary but spiritual and philanthropic. A monetary award is thus an insufficient remedy at law. Absent a temporary restraining order and temporary injunction, the rights of plaintiffs and the ministry of Highland Park Presbyterian Church will be irreparably injured. It supports numerous ministries, missionaries, and charitable endeavors of wide-ranging civic and community impact, including but not limited to: Habitat for Humanity, Interfaith Housing

Coalition, Dallas Pregnancy Resource Center, Presbyterian Children's Homes & Service, Salvation Army Partners, food banks, soup kitchens, childhood literacy education programs, prison ministries, adult job training services, and assisted living for the elderly. No amount of a subsequent monetary award would be an adequate remedy to the irreparable damage that would be done to the mission and ministries of Highland Park Presbyterian Church that would occur as a result of confiscatory action initiated by Grace Presbytery in retaliation for the exercise of plaintiff's rights.

67.   A temporary restraining order and temporary injunction during the pendency of this suit is necessary to stay the hand of Grace Presbytery from appointing an administrative commission that would, without just cause, usurp and replace the authority of the pastor, the session, or the board of trustees to thereby effect control over HPPC property. Said temporary restraining order and temporary injunction would protect the members of Highland Park Presbyterian Church who, under Texas nonprofit corporation law and HPPC's Articles of Incorporation, are also the members and, in effect, the shareholders of the local church corporation. Said restraining order and temporary injunction would preserve the status quo until such time as the question of ownership and use of the property of Highland Park Presbyterian Church can be determined by this Court. Absent said temporary restraining order and temporary injunction the rights of plaintiff, the governing body of Highland Park Presbyterian Church (the session), and the members of the congregation of Highland Park Presbyterian Church, and Highland Park Presbyterian Church property rights will be irreparably injured.

68.   Inasmuch as plaintiff seeks only a temporary restraining order and temporary injunction during the pendency of this suit, the interests of the plaintiff and the members of Highland Park Presbyterian Church and its local church corporation outweigh any possible

injury to Grace Presbytery, the non-owner, which might result from the granting of a temporary restraining order and a temporary injunction, said relief and injunction being in the public interest.

69.     There is a substantial likelihood that Highland Park Presbyterian Church will prevail on the merits of its suit for permanent injunction and declaratory judgment.

**WHEREFORE**, Plaintiff, Highland Park Presbyterian Church, prays that a temporary restraining order and temporary injunction be issued herein and that a permanent injunction and a declaratory judgment be issued herein after trial on the merits as follows:

1) Temporary Restraining Order - restraining and enjoining defendant Grace Presbytery of the Presbyterian Church (USA) and any of its agents, employees or other persons or entities acting on its behalf or in its stead, from:

> (a) filing any documents in the mortgage and conveyance records in the County where the subject property is located, the effect of which would be to place a cloud on the title of any property titled in the name of plaintiff;

> (b) otherwise taking any action to claim or assert ownership, use, or control of local church property, whether corporeal or incorporeal, movable or immovable, or real or personal, or a right to determine ownership, use or control of local church property, in the possession of, control of, owned by or titled in the name of Highland Park Presbyterian Church; and

> (c) asserting any rights to the property of Highland Park Presbyterian Church, including but not limited to seeking to change the locks of HPPC, initiating any disciplinary action against the ministers or members of HPPC, appointing an administrative commission with authority to assume "original jurisdiction" over HPPC's local governance and control of local property possessed by or titled in HPPC's name, or otherwise interfering, by dissolution or otherwise, in any way with the property-related rights and responsibilities of the employees of HPPC, the governing body of HPPC (the session), its congregation, or the governing body of its local church corporation Highland Park Presbyterian Church (the board of trustees);

2) Temporary Injunction - enjoining defendant during the pendency of this suit, from any of the acts described in paragraph 1) of this prayer;

3) Permanent Injunction - permanently enjoining defendant from any of the acts described

in paragraph 1) of this prayer; and

4) <u>Declaratory Judgment</u> - declaring that all property held by or titled in the name of the plaintiff, and any improvements thereon, whether corporeal or incorporeal, movable or immovable, or real or personal, is held without trust for the use and benefit of the PCUSA or other national denomination, or any of its regional administrative units such as Grace Presbytery, and that the plaintiff holds all property titled in its name, and all improvements thereon, in full and complete ownership pursuant to the laws of the State of Texas and as set forth in plaintiff's articles of incorporation, and that neither the PCUSA nor any of its regional administrative units such as Grace Presbytery has any right, title or interest in said property nor right to determine the ownership, use or control thereof.

5) that defendant be served with a copy of the above and foregoing petition and order;

6) that defendant be cited to answer said petition and to appear before this Honorable Court at a date and time fixed by this Court to show cause why a temporary injunction, permanent injunction, and declaratory judgment should not issue as prayed for in favor of plaintiff;

7) for all general and equitable relief, and;

8) for all costs of these proceedings.

Respectfully submitted,

Kent C. Krause
State Bar No. 11714600
kkrause@cdklawfirm.com
CRADDOCK DAVIS & KRAUSE LLP
3100 Monticello Avenue, Suite 550
Dallas, Texas 75205
214-750-3550
214-750-3551 (fax)

And

Lloyd J. Lunceford
lloyd.lunceford@taylorporter.com

---

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF**   Page 30

TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.
451 Florida St., 8th Floor
Baton Rouge, Louisiana 70801
225-381-0273
225-346-8049 (fax)

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION

STATE OF TEXAS       )
                          )
COUNTY OF DALLAS     )

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the County aforesaid, personally appeared  Michael W. Crain, who being first duly sworn, did depose and say that he is Chairman of the Board of Trustees for Highland Park Presbyterian Church, a Texas corporation and the plaintiff herein, that he has read the above and foregoing Petition for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and for Declaratory Judgment, and is familiar with the facts alleged therein, and that all information contained in the aforesaid petition is true and correct to the best of his knowledge, information and belief.

_____
Michael W. Crain

SWORN TO AND SUBSCRIBED, before me, on this _10th_ day of September, 2013, in

Dallas County, Texas.

_____
NOTARY PUBLIC

KAREN M. LOOMIS
MY COMMISSION EXPIRES
September 6, 2014

## LOCAL RULE 2.02 CERTIFICATE

Under Local Rule 2.02, I certify that I am unaware that Defendant is represented by counsel. Prior notice is not appropriate because irreparable harm is imminent and there is insufficient time to notify the opposing party. Further, any greater time of notice would impair the Court's power to grant relief because the subject matter of the application could be accomplished if further notice were required. The undersigned further represents that, to the best of his knowledge, the case in which this application is presented is not subject to transfer under Local Rule 1.06.

Kent C. Krause

## APPENDIX A

### Municipal Addresses of HPPC "West Block" Properties

3908 McFarlin

3912 McFarlin

3916 McFarlin

3920 McFarlin

3926 McFarlin

3928 McFarlin

3543 University

3917 University

3921 University

3929 University

3909 University


### Municipal Addresses of HPPC Jenkins Subdivision Properties

3829 McFarlin

3833 McFarlin

3837 McFarlin